## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Donte Hill and Dennis Barnette, | : | |
| | : | Case Nos. 1:19-cv-308 & 309 |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| City of Cincinnati, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## JURY INSTRUCTIONS

### July , 2022

## INDEX

Introduction ..................................................................................................................4

Duty to Follow Instructions ........................................................................................5

Duty to be Fair to Both Parties ..................................................................................6

Burden of Proof ..........................................................................................................7

Consideration of the Evidence ...................................................................................8

Direct and Circumstantial Evidence . ........................................................................10

Lawyers' Objections ..................................................................................................11

Credibility of Witnesses ............................................................................................12

Number of Witnesses and Exhibits ...........................................................................14

Stipulation ..................................................................................................................15

Summary of Plaintiff's Claim ....................................................................................16

Equal Protection .........................................................................................................18

Elements of Plaintiff's Claim.....................................................................................19

Intent ..........................................................................................................................24

Same Decision Defense ..............................................................................................25

Business Judgment Rule/Fairness ..............................................................................26

Reverse Discrimination ..............................................................................................27

Multiple Claims; Multiple Plaintiffs/Defendants ......................................................28

Effect of Instructions as to Damages .........................................................................29

Damages .....................................................................................................................30

Nominal Damages.......................................................................................................32

Punitive Damages……………………………………………………………………..33

Jury Deliberations ...........................................................................................................34

Juror Notes  .....................................................................................................................36

Experiments, Research and Investigation . ......................................................................37

Use of Electronic Technology to Conduct Research on or
        Communicate About a Case ................................................................................38

Requirement of Unanimous Verdict and Explanation of Verdict Form  .......................39

Foreperson  ......................................................................................................................41

Items to go to Jury Room .................................................................................................42

Procedure when Verdict Reached  ...................................................................................43

Final Instruction on How to Deliberate  ..........................................................................44

## INTRODUCTION

Ladies and Gentlemen of the jury, now that you have heard all of the evidence, it becomes my duty to give you the instructions of the Court concerning the law that is applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply the law to the facts as you find them from the evidence in the case.  You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  Neither are you to be concerned with the wisdom of any rule of law stated by me.  You must follow and apply the law.

Nothing I say in these instructions indicates that I have any opinion about the facts.  You, not I, have the duty to determine the facts.

I will start by explaining your duties and the general rules that apply in every civil case.  Next, I will explain some of the rules that you must use in evaluating particular testimony and evidence.  Then, I will explain the elements of the claims that the Plaintiffs, Mr. Hill and Mr. Barnette, are bringing against the Defendants, City of Cincinnati and Eliot K. Isaac.  And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.  Please listen carefully to everything I say.

## DUTY TO FOLLOW INSTRUCTIONS

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second job is to take the law that I give you, apply it to the facts, and decide whether either Plaintiff has proven his case by a preponderance of the evidence.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial and the instructions that I am now giving you.  All of the instructions are important, and you should consider them together as a whole.

The lawyers will talk about the law during their arguments.  But if what they say is different from what I say, you must follow what I say.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the Court, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence presented to you in this case.

## DUTY TO BE FAIR TO BOTH PARTIES

The fact that Mr. Hill and Mr. Barnette are private individuals and City of Cincinnati is a municipality should not impact your verdict. You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A municipality is entitled to the same fair trial as a private individual. All persons, including municipalities, and other organizations stand equal before the law, and are to be treated as equals.

In deciding the facts of this case, you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as it is now being given to you, and reach a just verdict regardless of the consequences.

### BURDEN OF PROOF

This is a civil case.  In a civil case, the plaintiff has the burden of proving each element of his or her claims by a "preponderance of the evidence."  In this case, this means that Mr. Hill and Mr. Barnette each has to produce evidence which, considered in light of all the facts presented, leads you to believe that it is more likely true than not that the Defendants violated their rights.

In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposing it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

To put it differently, if you were to put the Plaintiffs' and the Defendants' evidence on opposite sides of the scales, each Plaintiff would have to make the scales tip somewhat on his side.  If either Plaintiff fails to meet this burden, the verdict must be for the Defendants.  If either Plaintiff succeeds in meeting this burden, then the verdict must be for that Plaintiff.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may consider the testimony of all the witnesses, regardless of who may have called them, and all the exhibits received into evidence, regardless of who may have produced them.

## CONSIDERATION OF THE EVIDENCE

As I stated earlier, it is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case.  The term "evidence" includes the following:

1.      The sworn testimony of the witnesses; and

2.      All exhibits received or admitted in evidence.

3.      All facts that have been judicially noticed.

Some evidence is admitted for a limited purpose only.  If I instructed you that an item of evidence had been admitted for a limited purpose, you must consider it only for that limited purpose and not for another purpose.

On occasion, I told you that I was taking judicial notice of certain facts or events. You must accept those facts as true.

Remember that any statements, objections, or arguments made by the lawyers are not evidence in the case.  The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case and, in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice.

Also, during the course of the trial, I may have occasionally made comments to the lawyers, asked questions of a witness, or admonished a witness concerning the manner in which he or she should respond to the question.  Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case.

You should also disregard anything you may have seen or heard while court was not in session, even if what you saw or heard was done or said by one of the parties or witnesses.

In the final analysis, it is your own recollection and interpretation of the evidence that controls in the case.  What the lawyers say is not binding upon you; and except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

During the trial, I did not let you hear answers to some of the questions that the lawyers asked.  I may have also ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And I may have sometimes ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience.  In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."  Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude it was raining.

It is your job to decide how much weight to give direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one; nor does the law say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## LAWYERS' OBJECTIONS

The lawyers for both sides objected to some of the things that were said or done during the trial.  Do not hold that against either side.  The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence.  These rules are designed to make sure that both sides receive a fair trial.

And do not interpret my rulings on their objections as any indication of how I think the case should be decided.  My rulings were based on the rules of evidence, not on how I feel about the case.  In the event that I sustained an objection and did not permit a witness to answer a question, you must not draw any inferences from that question or speculate on what the answer of the witness might have been.  Remember that your decision must be based only on the evidence that you saw and heard here in court.

**CREDIBILITY OF WITNESSES**

Another part of your job as jurors is to decide how credible or believable each witness was.  This is your job, not mine.  It is up to you to decide if a witness's testimony was believable, and how much weight you think it deserves.  You are free to believe everything that a witness said, or only part of it, or none of it at all.  But you should act reasonably and carefully in making these decisions.

Let me suggest some things for you to consider in evaluating each witness's testimony.

Ask yourself if the witness was able to clearly see or hear the events.  Sometimes even an honest witness may not have been able to clearly see or hear what was happening and may make a mistake.

Ask yourself how good the witness's memory seemed to be.  Did the witness seem able to accurately remember what happened?

Ask yourself if there was anything else that may have interfered with the witness's ability to perceive or remember the events.

Ask yourself how the witness acted while testifying.  Did the witness appear honest?  Or did the witness appear to be lying?

Ask yourself if the witness had any relationship to either of the Plaintiffs or any of the Defendants, or anything to gain or lose from the case, that might influence the witness's testimony.  Ask yourself if the witness had any bias, prejudice, or reason for testifying that might cause the witness to lie or to slant testimony in favor of one side or the other.

Ask yourself if the witness testified inconsistently while on the witness stand, or if the witness said or did something or failed to say or do something, at any other time that is inconsistent with what the witness said while testifying.  If you believe that the witness was inconsistent, ask yourself if this makes the witness's testimony less believable.  Sometimes it may; other times it may not.  Consider whether the inconsistency was about something important or about some unimportant detail.  Ask yourself if it seemed like an innocent mistake or if it seemed deliberate.

And, ask yourself how believable the witness's testimony is in light of all the other evidence.  Was the witness's testimony supported or contradicted by other evidence that you found believable?  If you believe that a witness's testimony was contradicted by other evidence, remember that people sometimes forget things, and that even two honest people who witness the same event may not describe it exactly the same way.

These are only some of the things you may consider in deciding how believable each witness was.  You may also consider other things that you think shed some light on the witness's believability.  Use your common sense and your everyday experience in dealing with people.  And then decide what testimony you believe and how much weight you think it deserves.

## NUMBER OF WITNESSES AND EXHIBITS

In resolving disputed issues of fact, you should not permit your decision concerning any particular question to be determined merely by the number of witnesses or exhibits that one side or the other has introduced into evidence. The test is not which side brings the greater number of witnesses or presents the greater quantity of evidence, but which witnesses and which evidence you find sufficiently believable and trustworthy. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**STIPULATION**

The Plaintiff and the Defendants have stipulated — that is, they have agreed — that certain facts are as counsel have set forth.  You should therefore treat the following facts as having been proved:

Officer Donte Hill, an African American male, and Officer Dennis Barnette, a white male, were both employed by the City of Cincinnati as police officers in 2018. In September 2018, Officer Donte Hill used a version of the N-word while on duty and responding to a call. In December 2018, Officer Dennis Barnette used a version of the N-word while on duty and responding to a call. Both officers were eventually disciplined for that conduct by then Police Chief Eliot Issac, an African American male. While Officer Hill had originally been issued a written reprimand for his conduct, after further review, Chief Isaac issued both Officer Hill and Officer Barnette a 56-hour suspension without pay and suspended their police powers in December, 2018.

Both officers were members of the Fraternal Order of Police, a union representing police officers employed by the City of Cincinnati. A collective bargaining agreement between the Fraternal Order of Police and the City of Cincinnati governed each officer's employment.

The Fraternal Order of Police filed a grievance on Officer Hill's behalf asserting that Defendants suspended Officer Hill without just cause in violation of the collective bargaining agreement. An arbitrator conducted a hearing in which witnesses testified under oath. Ultimately, the arbitrator determined that the suspension of Officer Hill had been "improper" because Defendants already had issued a written reprimand to Officer Hill for the same conduct before increasing the discipline to a 56-hour suspension.

The Fraternal Order of Police filed a grievance on Officer Barnette's behalf also, asserting that Defendants suspended Officer Barnette without just cause in violation of the collective bargaining agreement. An arbitrator conducted a hearing in which witnesses testified under oath. Ultimately, the arbitrator determined that Officer Barnette had engaged in "reasonably prohibited misconduct," but he reduced the discipline issued to Officer Barnette from a suspension to a written reprimand.

The dispute between the parties here at this trial is different than the dispute that was presented to the arbitrator. The arbitration concerned whether there was just cause for Officer Hill's and Officer Barnette's suspensions pursuant to the collective bargaining agreement. This trial concerns whether Officer Hill and Officer Barnette were discriminated against on the basis of their race. These are separate issues. You, the jury, are the sole decisionmakers who will decide if former Chief Isaac and the City of Cincinnati discriminated against Officer Hill or Officer Barnette on the basis of their race.

## SUMMARY OF EACH PLAINTIFF'S CLAIM

### Plaintiff Donte Hill

Plaintiff, Mr. Hill, claims that Defendants, City of Cincinnati and Police Chief Eliot K. Isaac, while acting under the color of state law, intentionally discriminated against him based on his race in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Specifically, Mr. Hill claims that he had his police powers suspended on the basis of his race and that Chief Isaac increased the penalty from a reprimand to a suspension of his pay and duties imposed on the basis of his race and it was considerations of race that caused Chief Isaac to increase the punishment imposed.

Defendants deny that it violated Mr. Hill's equal protection rights. Specifically, Defendants deny that they suspended Mr. Hill's police powers because of his race. Defendants claim that they suspended Mr. Hill's police powers for legitimate non-discriminatory reasons as part of the disciplinary process due to his use of the "N-word" at work. Defendants further claim that even if they considered Mr. Hill's race when making the decision to suspend his police powers and suspend his pay and duties, they would have made the same decision regardless of Mr. Hill's race.

### Plaintiff Dennis Barnette

Plaintiff, Mr. Barnette, claims that Defendants, City of Cincinnati and Police Chief Eliot K. Isaac, while acting under the color of state law, intentionally discriminated against him based on his race in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Specifically, Mr. Barnette

claims that he had his police powers suspended and a suspension of his pay and duties, on the basis of his race.

Defendants deny that it violated Mr. Barnette's equal protection rights.  Specifically, Defendants deny that they suspended Mr. Barnette's police powers because of his race. Defendants claim that they suspended Mr. Barnette's police powers for legitimate non-discriminatory reasons as part of the disciplinary process due to his use of the "N-word" at work. Defendants further claim that even if they considered Mr. Barnette's race when making the decision to suspend his police powers, they would have made the same decision regardless of Mr. Barnette's race.

**EQUAL PROTECTION**

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall deny any person the equal protection of the laws. The Equal Protection Clause prohibits discrimination against public employees on the basis of race. Federal law provides that a person may sue in this Court for an award of money damages against anyone who, "under color" of any state law or custom, intentionally violates that person's rights under the Constitution of the United States.

## ELEMENTS OF EACH PLAINTIFF'S CLAIM

### Plaintiff Dante Hill

In order to establish his equal protection and discrimination claims against Defendants, Mr. Hill must prove each of the following facts by a preponderance of the evidence:

First: That the City of Cincinnati and Eliot K. Isaac intentionally discriminated against Mr. Hill based on his race when they either suspended his police powers, or when they increased the penalty from a reprimand to a suspension of his pay and duties,

Second, that the decision was made on the basis of his race;

Third: That Defendants committed such act or acts of discrimination under color of state law or authority; and

Fourth: That Defendants' act or acts were the proximate or legal cause of damages sustained by Mr. Hill.

### Plaintiff Dennis Barnette

In order to establish his equal protection and discrimination claims against Defendants, Mr. Barnette must prove each of the following facts by a preponderance of the evidence:

First: That the City of Cincinnati and Eliot K. Isaac intentionally discriminated against Mr. Barnette based on his race when they either suspended his police powers, or when they imposed a suspension of his pay and duties,

Second, that the decision was made on the basis of his race;

Third: That Defendants committed such act or acts of

discrimination under color of state law or authority; and

Fourth: That Defendants' act or acts were the proximate or legal

cause of damages sustained by Mr. Barnette.

The Court will now provide further explanation of the elements of each Plaintiff's

claim.

First Element: Intentional Discrimination

In order to establish the first element of his claim—that Defendants intentionally

discriminated against Mr. Hill or Mr. Barnette on the basis of their respective races when they

suspended Mr. Hill's police powers or when they increased the penalty from a reprimand to a

suspension of his pay and duties, or when they suspended Mr. Barnette's police powers and

imposed a suspension of his pay and duties —Mr. Hill and Mr. Barnette must establish that their

respective races were a motivating factor in Defendants' decision to suspend their police powers,

to increase Mr. Hill's penalty from a reprimand to a suspension of his pay and duties, or to

impose a suspension upon Mr. Barnette of his pay and duties.  The mere fact that Mr. Hill is black

or that Mr. Barnette is white, and their police powers were suspended, that Mr. Hill's punishment

increased from a reprimand to a suspension of duties and pay, or that Mr. Barnette had a

suspension of his duties and pay imposed on him is not sufficient, in and of itself, to establish his

claim under the law.  Instead, it must be that considerations of race were motivating factors in any

of these actions.

"Motivating factor" means that the evidence must show that, but for Mr. Hill's race or Mr. Barnette's race, their respective police powers would not have been suspended, that Mr. Hill's penalty would not have been increased from a reprimand to a suspension of his pay and duties, or that a suspension of Mr. Barnette's pay and duties would not have been imposed. The phrase "motivating factor" does not mean that Mr. Hill's race or Mr. Barnette's had to be the only motivation for Defendants' decision to take the previously mentioned adverse actions against Mr. Hill or Mr. Barnette. However, it must have been a factor that actually led to the decisions. In showing that race was a motivating factor, Mr. Hill and Mr. Barnette are not required to prove that their race was the sole motivation or even the primary motivation for Defendants' decision. Mr. Hill and Mr. Barnette need only prove that race played a part in Defendants' decisions even though other factors may also have motivated Defendants.

Second Element: Under Color of State Law

Acts are done "under color of . . . law" of a state, not only when state officials act within the bounds or limits of their lawful authority, but also when such officers act without and beyond the bounds of their lawful authority. For the purposes of this case, the phrase "under color of state law" includes acts done under any rule, regulation, or policy of City of Cincinnati.

In order for unlawful acts of an official to be done "under color of any law," the unlawful acts must be done while the official is purporting or pretending to act in the performance of the official's official duties. The unlawful acts must consist of an abuse or misuse of power possessed by the official only because the person is an official. The unlawful acts must be of such

a nature, and be committed under such circumstances, that they would not have occurred but for the fact that the person committing them was an official, purporting to exercise official powers.

The parties do not dispute that the actions taken against Mr. Hill and Mr. Barnette were done under color of law.


Third Element: Proximate Cause

An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage to the plaintiff, and that the plaintiff's injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

Mr. Hill and Mr. Barnette each have the burden of proving each and every element of their claims by a preponderance of the evidence. If you find that Mr. Hill or Mr. Barnette has not proven any one of the elements of their claims by a preponderance of the evidence, you must return a verdict for the Defendants as to that particular Plaintiff.

**INTENT**

In order to establish his case, Mr. Hill and Mr. Barnette must prove by a preponderance of the evidence that the Defendants were motivated by a racially discriminatory purpose. In other words, Mr. Hill and Mr. Barnette must prove that Defendants intentionally or purposefully discriminated against them because of race.[1] To demonstrate that the discrimination was purposeful and intentional, Mr. Hill and Mr. Barnette must merely show that the decision was made to provide differential treatment on the basis of race, and that race was at least one of the motivations for this disparate treatment.

In determining whether Defendants intentionally discriminated against Mr. Hill or Mr. Barnette on the basis of race, you may consider all the evidence presented in this case. Mr. Hill and Mr. Barnette may use either direct or indirect evidence.

Mr. Hill and Mr. Barnette must prove that the Defendant actually was motivated, at least in part, by a racially discriminatory purpose. It is not enough to show that Defendants' conduct had a negative effect on members of Mr. Hill's race or Mr. Barnette's race.

---

[1] *Wesley v. Collins*, 791 F.2d 1255 (6th Cir. 1986)

{00366429-1}                                         24

**SAME DECISION DEFENSE**

If you determine that Mr. Hill or Mr. Barnette proved that their race was a factor motivating Defendants' decision to suspend their police powers, to increase the penalty for Mr. Hill from a reprimand to a suspension of duties and pay, or to impose a suspension of duties or pay upon Mr. Barnette, then you must consider whether or not Defendants proved that it would have made those same decisions regardless of their race. If Defendants prove by a preponderance of the evidence that it would have made the same decisions regardless of Mr. Hill's or Mr. Barnette's race, you must find for Defendants.

**BUSINESS JUDGMENT RULE/FAIRNESS**

In determining whether Defendants violated Mr. Hill's or Mr. Barnette's equal protection rights by suspending their police powers, increasing the penalty for Mr. Hill from a reprimand to a suspension of duties and pay, or to imposing a suspension of duties or pay upon Mr. Barnette, on the basis of their race, you should not base your decision on whether or not Defendants exercised good business judgment. The law does not protect employees against merely unfair or unreasonable treatment from their employers, but does protect against race discrimination. However, the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's stated reason for the employment action was its actual motivation.

## REVERSE DISCRIMINATION

Plaintiff Dennis Barnette is Caucasian. As such, he must establish background circumstances to support the suspicion that the Defendants are the unusual employers who discriminate against the majority. *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir 1985).  That can be accomplished by, among other things, showing that the Chief imposing the discipline is African American, and that he treated white officers differently than black officers.  *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002).

**MULTIPLE CLAIMS; MULTIPLE PLAINTIFFS/DEFENDANTS**

You must give separate consideration to each claim and each party in this case. Although there are two defendants, it does not follow that if one is liable, any of the others is also liable. Although there are two plaintiffs, it does not follow that if one is successful, the other is too.[2]

---

[2] Pattern Federal Civil Jury Instructions of the Seventh Circuit Court of Appeals; Instruction 1.25

**EFFECT OF INSTRUCTIONS AS TO DAMAGES**
**(CONSIDER DAMAGES ONLY IF NECESSARY)**

I will now instruct you as to the proper measure of damages.  If you find for the Plaintiff, Mr. Hill, or for Plaintiff, Mr. Barnette, and against the Defendants you must determine what damages, if any, to award to either Plaintiff.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.  Your first task is to decide whether the Defendants are liable.  Nor does the Court mean to suggest that if you find for Mr. Hill or Mr. Barnette, you are required to award any damages at all.  I am instructing you on damages only so that you will have guidance in the event you decide that the Defendants are liable.  If you decide that the Defendants are not liable on the Plaintiff's claims, you need not go any further.

Mr. Hill has the burden of proving both liability and damages by a preponderance of the evidence, and it is for you to determine what damages, if any, have been proved.

Mr. Barnette also has the burden of proving both liability and damages by a preponderance of the evidence, and it is for you to determine what damages, if any, have been proved.

**DAMAGES**

If you find in favor of Mr. Hill or Mr. Barnette on either of their respective equal protection claims, then you must award any successful Plaintiff the sum as you find from the preponderance of the evidence will fairly and justly compensate him for any damages you find he sustained as a direct result of having his equal protection rights violated.  You should consider the following elements of damages:

Juries are to consider, in awarding such damages, the nature of the constitutional deprivation, the magnitude of the mental distress and humiliation suffered by the plaintiffs, and any other injury caused as a result of being deprived of federally protected rights; such damages can include non-quantifiable damages in the form of mental distress, humiliation, loss of reputation, and other general pain and suffering.  *Smith v. Heath*, 691 F.2d 220 (6th Cir. 1982). The damages can also include any wages, salary, stipend, or out of pocket expenses they have lost.  *Id.*

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.[3]

---

[3] 5th Circuit Pattern Jury Instructions § 15.2

Some of these damages, such as mental or physical pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, instead determining what amount that will fairly compensate the Plaintiff for his injuries.[4]

---

[4] 5th Circuit Pattern Jury Instructions § 4.8

## NOMINAL DAMAGES

If you find in favor of Mr. Hill on his equal protection claim, but you find that Mr. Hill's damages have no monetary value, then you must return a verdict for Mr. Hill in the nominal amount of one dollar.

If you find in favor of Mr. Barnette on his equal protection claim, but you find that Mr. Barnette's damages have no monetary value, then you must return a verdict for Mr. Barnette in the nominal amount of one dollar.

## PUNITIVE DAMAGES

If you determine that any of the Defendant's conduct is shown to be motivated by evil motive or intent, or involves reckless or callous indifference to the federally protected rights of the Plaintiffs, you may award punitive damages. *Smith v. Wade*, 461 U.S. 30, 52, 56 (1983). Evidence of sufficiently serious misconduct that calls for deterrence and punishment . . . above that provided by compensatory awards can meet this standard. *Burkhart v. Randles*, 764 F.2d 1196 (6th Cir. 1985).

Imposing punitive damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within your discretion. *Id.*, *citing Gill v. Manuel*, 488 F.2d 799, 801 (9th Cir. 1973)

## JURY DELIBERATIONS

It is your duty as jurors to confer with one another and to deliberate with a view to reaching an agreement, if you can do so without sacrificing your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you are convinced it is erroneous.

However, do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Remember always that you are not partisans. You are judges—impartial judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case. Do not take a firm position at the outset and then be too proud to change your position.

If it becomes necessary during your deliberations to communicate with the Court, you may send a written message through Mr. Miller to the Court, signed by your foreperson or by one of the other jurors. No member of the jury should ever attempt to communicate with the Court other than by a signed writing. The Court will not communicate with you other than in writing or in open court, on the record, and with counsel present.

All court personnel are prohibited from talking to you about the merits of this case.

Should your deliberations extend to 4:30 p.m., Mr. Miller will inquire whether you wish to continue to deliberate to a later hour. The purpose of the inquiry is to facilitate the scheduling of Court personnel. Do not give Mr. Miller any indication of how your vote stands or provide any information other than the hour to which you wish to deliberate.

There is no smoking permitted in the Courthouse.  If any of you wishes to smoke during your deliberations, the jury must recess deliberations, and the juror who wishes to smoke must go to an area where smoking is permitted.

Finally, as I mentioned earlier, if you find you are unable to report for duty due to an emergency, please call both my chambers at (513) 564-7630 and Mercedes Payne at (513) 564-7513 or (513) 678-9324 as soon as possible.  If you are unable to reach Ms. Payne, please call Maria Welker at (513) 564-7514.

**JUROR NOTES**

Let me say a word about the use of notes during your deliberations.  Please remember that notes should be used only to refresh the recollection of the juror who took the notes.  You should not use your notes in jury deliberations to prove to other jurors that your notes are in fact what a witness actually said; they are only your impression of what the witness said. We depend on the judgment of all members of the jury.  Notes are only aids to memory and should not be given precedence over your own independent recollection of the facts.

## EXPERIMENTS, RESEARCH, AND INVESTIGATION

Remember that you must make your decision based only on the evidence that you saw and heard here in court.  Do not try to gather any information about the case on your own while you are deliberating.

For example, do not conduct any experiments inside or outside the jury room.  Do not bring any books, like a dictionary, or anything else, like a computer, with you to help your deliberations.  Do not conduct any independent research, reading, or investigation about the case.  This includes internet research; do not search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide this case.  Finally, do not visit any of the places that were mentioned during the trial.  Make your decision based only on the evidence admitted in this case.  Please do not try to find information from any source outside the confines of this courtroom.

**USE OF ELECTRONIC TECHNOLOGY**
**TO CONDUCT RESEARCH ON OR COMMUNICATE ABOUT A CASE**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

## REQUIREMENT OF UNANIMOUS VERDICT
## AND EXPLANATION OF VERDICT FORM

Each of you has a copy of the instructions that I am now reading and attached to these instructions is a copy of the verdict form. These will accompany you to the jury room.

The verdict form contains a series of questions called "interrogatories." You must answer each of them in writing. You must be unanimous as to the answer to each question.

Nothing that the Court has said in these instructions and nothing in the verdict form that has been prepared for your verdict is intended to suggest or convey in any way the verdict that the Court thinks you should return. The verdict is the exclusive duty and responsibility of the jury.

After you have reached agreement, the jury foreperson should complete, sign, and date the verdict form. After the foreperson signs and dates the form, each juror must also sign the verdict form. To avoid confusion, you are instructed to fill in, date, and sign the copy of the verdict form contained in the brown notebook that Mr. Miller will give you when you leave to deliberate, rather than the verdict forms attached to your individual copies of these instructions.

Your verdict must represent the considered judgment of all jurors; in other words, it must be unanimous. In order to return a verdict for the Plaintiff or for the Defendants with respect to any claim, it is necessary that all jurors agree with that verdict and indicate their agreement by signing the appropriate verdict form.

Once again, if, during your deliberations, you should desire to communicate with the Court, please reduce your message or question to writing signed by the foreperson, and pass the note to Mr. Miller who will bring it to my attention. I will then respond as promptly as

{00366429-1}                                      39

possible, either in writing or by having you returned to the courtroom so that I can address you orally.  I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division at the time.

## FOREPERSON

When you arrive in the jury room, your first order of business will be the selection of a foreperson to preside over your deliberations.

The foreperson acts as the chairperson of the meeting.  He or she must see to it that the issues are taken up as given to you; that everyone has a chance to speak to these matters; and that your deliberations proceed in an orderly way.

## ITEMS TO GO TO JURY ROOM

All of the exhibits that have been admitted into evidence will go to the jury room with you, together with a copy of these instructions and the verdict form.

## PROCEDURE WHEN VERDICT REACHED

When you have reached your verdict and have filled out, signed, and dated the verdict form, the foreperson of the jury shall notify Mr. Miller that the jury has reached its verdict. Never reveal to anyone exactly how the jury stands, numerically or otherwise, until it comes time for you to return to court with a complete verdict.

## FINAL INSTRUCTION ON HOW TO DELIBERATE

You will now retire to the jury room to begin your deliberations.  Before you do, however, I would like to give you a few practical instructions regarding how you should conduct your deliberations.

As I stated previously, when you retire to the jury room, the first thing that you should do is to elect a foreperson.

All eight of you must be present in the jury room when you are deliberating.  You may take breaks whenever you want—for instance if someone would like to go outside to smoke a cigarette—but you must cease your deliberations until everyone has returned to the jury room.

If your deliberations extend beyond today, you should decide what time in the morning you wish to start your deliberations.  You may elect to start earlier in the morning if that is more convenient for you.  However, you should start no later than 9:00 a.m.  Remember, you cannot begin your deliberations each day until all eight of you have arrived.

As I informed you, you may deliberate beyond the hour of 4:30 p.m.  Shortly before 4:30 p.m. Mr. Miller, the Courtroom Deputy, will inquire whether you wish to continue to deliberate to a later hour.  When you are ready to leave for the day, you will come back into the courtroom and I will give you our regular admonition.

With that, I will send you back to the jury room to begin your deliberations.